# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN K.A. DOE,                                  )
                                                )
               Plaintiff,          )          Civil Action
                                                )
v.                                              )          No.: 22-cv-04561-CFK
                                                )
THE UNIVERSITY OF THE ARTS, et al.   )
                                                )
             Defendants.         )
                                                )

## FIRST AMENDED COMPLAINT

AND NOW comes John K.A. Doe ("Plaintiff"), by and through the undersigned counsel, sets forth the following First Amended Complaint in Civil Action against Defendants, The University of the Arts ("UArts" and/or "The University"), its employees/faculty members, Kathryn Donovan ("Donovan") and Daniel Dunn ("Dunn"), jointly and/or severally, and in support thereof, avers as follows:

## NATURE OF THE ACTION

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of the acts and omissions of Dunn, Donovan, UArts, and their respective employees, representatives, and agents relating to sexual assault, abuse and nonconsensual touching and harassment by Defendant Dunn.

2.      Plaintiff, a former student at UArts, seeks damages against defendants UArts and Donovan for their failure to properly handle Plaintiff's Title IX complaint after his professor, Defendant Daniel Dunn, sexually assaulted him in violation of UArts' Title IX policy on sexual misconduct, sexual violence, and sexual harassment.  Defendants UArts and Donovan failed to follow the University's Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking

and Harassment Policy ("The Policy"). Having the power, authority and responsibility to act, Defendants failed Plaintiff, by showing deliberate indifference towards sexual assault perpetuated by a University professor when Defendant Donovan failed to immediately report Plaintiff's complaint to the Title IX Coordinator, lied to Plaintiff about drafting a statement for his review, mislead Plaintiff to believe the Title IX process was underway when, in truth, Donovan had not taken any action, and lied to Plaintiff about terminating the employment of Defendant Dunn.

3.      Plaintiff seeks relief for abuse and assault that occurred as a result of the negligence and failures of all Defendants and each and every Defendant is liable. Having the power, authority and responsibility to act, Defendants failed Plaintiff by showing deliberate indifference to sexual assault perpetuated by a professor on students, fostering an environment of abusive activity towards students, failing to institute corrective measures to protect students from assault and abuse, failing to investigate, train, oversee, monitor and supervise professors, employees, and agents, including but not limited to Defendant Dunn, failing to have a competent and trained Title IX Coordinator, as required by law, failing to respond to complaints of sexual abuse, and/or actively defending and covering up abuse, all at the expense of Plaintiff.

4.      Plaintiff seeks damages against Defendant Dunn for engaging in non-consensual sexual contact when Defendant Dunn performed oral sex on Plaintiff, John K.A. Doe, while Plaintiff was incapacitated an unable to provide consent and, as a result, subsequently infecting Plaintiff with Syphilis.

## THE PARTIES

5.      Plaintiff is an adult male resident of the state of California.

6.      Defendant, University of the Arts is a private institution of higher learning and incorporated as an educational institution in the Commonwealth of Pennsylvania. The University

is a corporation with a principal address of 320 South Broad Street, Philadelphia, PA 19102.  It holds itself out as the only institution of its kind in the nation offering programs in design, fine arts, media arts, crafts, music, dance, theater, and writing.

7.      At all times material hereto, UArts, purposefully established significant contacts in the County of Philadelphia, Commonwealth of Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business and educational activities in the County of Philadelphia, Commonwealth of Pennsylvania.

8.      UArts receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

9.      At all times material hereto, Defendant, UArts, operated by and through its authorized agents, servants, employees, officers, and/or faculty members who were acting within the course and scope of their employment, authority, agency, and/or faculty membership at UArts.

10.     Defendant Kathryn Donovan is a resident of the State of Delaware residing at 803 McCabe Avenue, Wilmington, DE, 19802.

11.     At all times material hereto, Defendant Donovan was a professor, faculty member, adjunct, instructor, and/or head of the Musical Theater Department of The Brind School of Theater at The University.

12.     At all times material hereto, Defendant Donovan was an employee, agent, and/or representative of Defendant UArts and was acting within the scope of her employment and/or agency with UArts.

13.     Defendant Daniel Dunn is a resident of the State of New Jersey residing at 3 Winterberry Place, Delran, NJ, 08075.

14.     At all times material hereto, Defendant Dunn was a professor, faculty member, adjunct, and/or instructor in the Musical Theater Department of The Brind School of Theater at The University.  Defendant Dunn had been a professor, faculty member, adjunct and/or instruction with The University since 2016.

15.     At all times material hereto, Defendant Dunn was an employee, agent, and/or representative of Defendant UArts and was acting within the scope of his employment and/or agency with UArts.

16.     At all times material hereto, Defendants John Does 1-5 were individuals who were acting in their capacity as officers, principal officers, agents, servants, employees, and/or faculty members of Defendant, UArts.

## JURISDICTION AND VENUE

17.     Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

18.     This Honorable Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

19.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## STATEMENT OF FACTS

## THE SEXUAL ASSAULT

20.     Plaintiff John K.A. Doe enrolled in the four-year Musical Theater Bachelor of Fine Arts degree program, The Brind School of Theater at the University of the Arts in the fall of 2018 as a freshman.

21.     At all times material hereto, Defendant Donovan was the Head of the Musical Theater Program in The Brind School of Theater at The University.

22.     After successfully completing his first year in the musical theater program, Plaintiff started the fall 2019 semester as a sophomore.

23.     In the fall of 2019, as part of the required curriculum, Plaintiff enrolled in a yearlong class called Jazz Dance Practice which was taught by Defendant Dunn.

24.     In or around December 2019, Defendant Dunn and Plaintiff began communicating on an online platform, Instagram, through "liking" and "commenting" on each other's Instagram posts.

25.     In or around January or February 2020, Defendant Dunn invited Plaintiff to meet him at his theater company located in Philadelphia, Pennsylvania.

26.     Upon information and belief, Defendant UArts, along with its authorized agents, servants, employees, officers, and/or faculty members including Defendants Donovan and Dunn, were aware that it was common for UArts' professors, and students, such as Plaintiff, to spend time together in the Philadelphia arts community outside of the University setting.

27.     At all times relevant hereto, Defendant UArts was aware of and encouraged UArts' professors and students to spend time together in the Philadelphia arts community for educational purposes as part of the course and scope of the employment of its authorized agents, servants, employees, officers, and/or faculty members, including Donovan and Dunn.

28.     In or around January or February 2020, Plaintiff met Defendant Dunn in the evening hours at his theater company.  Upon arrival at Defendant Dunn's theater company, Plaintiff was greeted by Defendant Dunn who provided, supplied, and/or served Plaintiff, who was

not legal drinking age, with alcohol.  Plaintiff and Defendant Dunn did not engage in any sexual contact.

29.    Sometime after the social visit at Defendant Dunn's theater company, Defendant Dunn invited Plaintiff to his home located in Philadelphia, Pennsylvania.

30.    In or around February or March of 2020 Plaintiff met Defendant Dunn at his residence in Philadelphia, Pennsylvania.  During that social visit Defendant Dunn provided, supplied, and/or served Plaintiff alcohol.

31.    While at Defendant Dunn's residence, during an arts-based discussion about the film The Wizard of Oz, Defendant Dunn invited Plaintiff into his bedroom to watch a movie. Defendant Dunn turned on the movie The Wizard of Oz.  Defendant Dunn continued to provide, supply, and serve Plaintiff alcohol the entire evening.  Plaintiff blacked out while watching the movie and lost consciousness.  Plaintiff was in and out of consciousness and unable to control his faculties.  Plaintiff recalls Defendant Dunn taking his shirt off, which made Plaintiff feel uncomfortable and nervous but he wasn't able to remain conscious.  Plaintiff recalls briefly regaining consciousness and seeing the movie The Wizard of Oz on the television and seeing Defendant Dunn performing oral sex on Plaintiff.

32.    At no time did Plaintiff consent to any kind of sexual activity including oral sex. When Defendant Dunn was performing oral sex on Plaintiff, Plaintiff was unconscious and unable to control his faculties.  Plaintiff was not able to maintain a conscious state.

33.    Plaintiff woke the next day and found himself in Defendant Dunn's bed in his residence.  Plaintiff did not feel well and was barely able to walk when he attempted to leave Defendant Dunn's residence.

34.     The day after Defendant Dunn assaulted Plaintiff, at approximately 4:36 p.m., Defendant Dunn sent Plaintiff a private message on Instagram asking, "How was your slumbbbber?"  Plaintiff responded by private message stating, "I think I just got sober.  I did not mean to drink that much so I apologize greatly for that."

35.     Upon information and belief, at all times material hereto, Defendant Dunn knew or should have known that Plaintiff was not of legal drinking age when Defendant Dunn provided, supplied and/or served Plaintiff alcohol.

36.     Defendant Dunn and Plaintiff did not see each other outside of class after the assault.

## PUNITIVE DAMAGES ALLEGATIONS

37.     In or about April 2020 Plaintiff began to suffer from loss of appetite, nausea, jaundice, loss of energy, a rash, and abdominal pain.

38.     On or about April 30, 2020 Plaintiff was hospitalized at the Lurie Children's Hospital of Chicago and diagnosed with Syphilis.  Plaintiff was treated with three injections of penicillin as well as oral antibiotics.

39.     After Plaintiff was told he was diagnosed with Syphilis, he sent Defendant Dunn a private message in Instagram advising Defendant Dunn of his recent diagnosis and stating that Defendant Dunn was the last person he was sexually active with.  Plaintiff also told Defendant Dunn that he could not remember everything that happened that night.

40.     Defendant Dunn responded to Plaintiff's message stating, "To be completely transparent, to my knowledge nothing happened between us that would have caused any type of contraction in that way.  Also, I am fully tested regularly and was tested prior to us hanging out

and after and have received negative results both times.  I will certainly get tested again, and I am sorry you had to go through that.  Thank you for the heads up."

41.     Upon information and belief, Plaintiff contracted syphilis from Defendant Dunn the night that Defendant Dunn engaged in nonconsensual sexual contact with Plaintiff at Defendant Dunn's residence.

42.     On or about May 11, 2020 Plaintiff emailed Defendant Dunn requesting an extension of time for him to submit the "final dance assignment" due to his illness.

43.     Defendant Dunn responded stating, "If you are unable to get the assignment in due to exhaustion, I completely understand and can count this as excused."  Subsequently, Defendant Dunn excused the assignment for Plaintiff.

44.     Upon information and belief, other students sent requests to Defendant Dunn to extend the deadline for the "final dance assignment."  However, Plaintiff was the only student where Defendant Dunn responded to the request stating that he would excuse the assignment.

45.     Upon information and belief, the reason for which Defendant agreed to excuse the assignment for Plaintiff was based on sex and/or the nonconsensual sexual contact that occurred between the two Defendant Dunn and Plaintiff and/or Defendant transmitting syphilis to Plaintiff.

46.     At all relevant times, Defendant Dunn was in a position of power over Plaintiff because he was Plaintiff's professor, teacher and instructor at The University.

47.     At all relevant times, Defendant Dunn had direct control over the evaluation and grading of Plaintiff in the Jazz Dance Practice class.

48.     Defendant Dunn engaged in unwelcome verbal and/or non-verbal contact, sexual advance, request for sexual contact or sexual favors, or other unwanted conduct of a sexual nature

that was sufficiently severe, persistent, or pervasive or having the effect of unreasonably interfering with an individual's academic or educational experience.

## STAFF MANUAL[1]

49.     Upon information and belief, Defendant Dunn's conduct violated the University's Staff Manual which contains policies and procedures relating to benefits and employee rights and responsibilities for all staff members of the University.

50.     Section 3 of the Staff Manual, Sexual Harassment and Other Prohibited Harassment, states, in part:

> Faculty, staff and students of the University are entitled to participate in and obtain the benefits of University programs, activities and employment without being discriminated against on the basis of: race, color, religion, sex, gender identity, national origin, ag[e]
>
> ***
>
> The rights defined by this policy apply to all faculty, staff and students of the University, and the obligations are **binding on all faculty and staff as part of their employment**, regardless of tenure or years of servic[e] (emphasis added)

51.     Section 3 of the Staff Manual, Sexual Harassment and Other Prohibited Harassment, defines consent as:

Consent

For the purpose of this policy, consent is clear, voluntary and unambiguous communication indicating a willingness to engage in a particular activity. Consent may not be inferred from silence, passivity, lack of resistance or lack of active response. In the absence of an outward demonstration, consent does not exist. Consent can be withdrawn by either party at any point. Consent is not effective if it results from the use of physical force, threat of physical force, intimidation, coercion, incapacitation or any other factor that would eliminate an individual's ability to exercise his or her own free will to choose whether or not to engage in a particular activity. Individuals are considered impaired and unable to give consent when intoxicated, of limited mental capability or other similar condition that interferes with reasonable judgment.

---

[1] *See* the University's Staff Manual Attached hereto as Exhibit A.

52.      Section 3 of the Staff Manual, Sexual Harassment and Other Prohibited Harassment, forbids any romantic or sexual interaction between students and faculty, stating:

> **Employee/Student Interaction**
>
> In addition to the general prohibitions against sexual misconduct, sexual harassment and other forms of harassment of any type, the University imposes an obligation on its staff and faculty members with regard to their interactions with students.  No employee may ask for a date, make a sexual advance to a student, or in any other way become romantically or sexually involved with a student.  This rule is for the protection of students, employees and the University.
>
> If a staff or faculty member has any doubt or question about whether his or her relationship with a student violates this policy, the employee should refrain from further interaction with the student and contact the appropriate Title IX Deputy Coordinator for advice.
>
> A staff or faculty member may not in any way use his or her status as an employee to intimidate a student or advance a personal or sexual relationship.

53.      Defendant Dunn's conduct and interactions with Plaintiff directly violated Section 3, Sexual Harassment and Other Prohibited Harassment, of the University's Staff Manual.

54.      Defendant Dunn knew or should have known that his conduct and interactions with Plaintiff directly violated Section 3, Sexual Harassment and Other Prohibited Harassment, of the University's Staff Manual.

55.      Upon information and belief, and on that basis Plaintiff alleges that Defendants, UArts and Donovan, at all times relevant to Plaintiff's abuse, knew that Defendant Dunn engaged in interactions with students, including Plaintiff, in violation of Section 3, Sexual Harassment and Other Prohibited Harassment, of the University's Staff Manual, knew that there were complaints about Defendant Dunn's inappropriate interactions with students, but nonetheless allowed Defendant Dunn to continue to be employed for Defendant UArts, without any prior warnings, protections, investigations, or remedial steps taken to limit his in appropriate interactions with students.

56.    Upon information and belief, authorized agents, servants, employees, officers, and/or faculty members of Defendant UArts were made aware of Defendant Dunn's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, battery, and harassment of Plaintiff.

57.    The authorized agents, servants, employees, officers, and/or faculty members of Defendant UArts had a duty to report to The University's Title IX Coordinator the allegations of Defendant Dunn's inappropriate sexual conduct with students.

58.    Upon information and belief, Defendant UArts failed to implement and enforce a policy prohibiting authorized agents, servants, employees, officers, and/or faculty members , including Defendant Dunn, from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

59.    Upon information and belief, Defendant UArts failed to properly communicate to its authorized agents, servants, employees, officers, and/or faculty members including Defendant Dunn, The University's policy prohibiting employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

60.    Upon information and belief, Defendant UArts failed to ensure that its authorized agents, servants, employees, officers, and/or faculty members , including Defendant Dunn, were aware of and knew The University had a policy prohibiting employees, professors, faculty members, adjuncts, and/or instructors from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

61.     Upon information and belief, Defendant UArts did not put into place sufficient repercussions and/or disciplinary action for employees who violated the policy prohibiting authorized agents, servants, employees, officers, and/or faculty members from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

62.     Upon information and belief, in the spring of 2020, Defendant Dunn was offered a reasonable assurance of a teaching position for the fall semester of 2020.

## PLAINTIFF'S TITLE IX REPORT

63.     On or about May 13, 2020 Plaintiff emailed Defendant Donovan, who was the Head of the Musical Theater Department at The University, and requested to talk to her about an important situation.

64.     On or about the evening of May 13, 2020, Plaintiff spoke with Defendant Donovan and reported to her in detail that Defendant Dunn, who was his professor at the time, invited Plaintiff to his home and supplied, served, and provided Plaintiff with alcohol and then performed oral sex on Plaintiff without his consent.  Plaintiff also told Defendant Donovan that Defendant Dunn gave him syphilis causing him to become ill and requiring him to be hospitalized.

65.     After Plaintiff informed Defendant Donovan that he was served alcohol by his professor who then performed nonconsensual oral sex on him while he was in and out of consciousness, Defendant Donovan told Plaintiff that she would take care of things by writing out a statement based on what Plaintiff told her and she would send it to him for his review.

66.     Defendant Donovan was a "Responsible Employee" under The University's Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy

("Policy"), Updated August 2019[2] and was mandated to report any incidents of misconduct under The Policy to The University's Title IX Coordinator.

67.    After the initial call with Defendant Donovan, Plaintiff followed up with her multiple times, including on June 12, September 22, October 4, and October 6 inquiring about the written statement Defendant Donovan told him she was going to draft and send to him for is approval.

68.    On June 15, 2020 Defendant Donovan wrote to Plaintiff implying that she was going to terminate Defendant Dunn's employment with the University by stating, "I have moved ahead with my plan to change the hiring for fall to reflect our conversation and will be putting an anonymous note on the file (which I will put past you before I do)- the delay is in my crafting precollege first and then moving to the fall hiring process, but I have already announced my intention (with no details or names shared) and so you can consider the plan in place. Sending you warmth and love and in a few weeks look for a statement for you to approve from me that will go on the official file."

69.    Despite repeated assurances that Defendant Donovan was drafting a written statement for Plaintiff's approval, Defendant Donovan never provided any such written statement to Plaintiff for his approval.

70.    Further in violation of The University's Policy (*see* Exhibit B), no interim support and/or protective measures were discussed with or provided to Plaintiff prior to the start of the fall 2020 semester to assure him that he could expect to continue his education in a safe environment free from sexual harassment, sexual violence, and sexual misconduct.

---

[2] *See* University of the Arts Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy, Updated August 2019 attached hereto as Exhibit B.

71.     As a result of The University's failure to provide the required interim support and/or protective measures as required by law and the University's Policy, Plaintiff took a leave of absence during the fall 2020 semester with the intention of returning in the Spring of 2021.

72.     On or about September 22, 2020, Defendant Donovan responded to Plaintiff stating, "many GENUINE apologies. there are so many things right now that put a big delay on that note, and it is very important to me. I will reach back this week with more information. thank you for reminding me."

73.     On or about October 6, 2020, Defendant Donovan responded to Plaintiff's plea for action by stating, "Please write a statement that you would like for me to have on file to cover the information that we discussed this summer. I have a large number of responses to your email and I would rather respond than react, so I will keep this short. **As you know, I have long since terminated the employment of this individual**, not to be employed again. With the departure of the Theater Dean and the university's Title IX Coordinator, there is not in this interim semester a person to whom I would directly report the incident to carry out a trial or legally approach the matter. It was my understanding, though, from our conversation that you were interested in avoiding such an arrangement. **Which means that I am left as the superior of this individual and this position, and I have terminated their employment.**" (emphasis added).

74.     On or about October 7, 2020, Defendant Donovan wrote to Plaintiff advising him that she planned to speak to someone from the Title IX office that day for the first time.  Defendant Donovan further admitted that she should have contacted the Title IX office when Plaintiff first reported to her.  Defendant Donovan further indicated that she was conducting her own research to determine the appropriate steps under Title IX.

75.     Upon information and belief, in or around May 2020, UArts failed to have a Title IX Coordinator and/or a trained interim Title IX coordinator in violation of state and federal laws and The University's own policies. *See* Exhibit B.

76.     The following acts and omissions by Defendant Donovan were in direct violation of Title IX and The University's Policy:

   a.   Defendant Donovan failed to immediately inform The University's Title IX Coordinator as required under the University's Policy;  *See* Exhibit B.

   b.   At all times material hereto, Defendant Donovan failed to properly advise Plaintiff of his rights under Title IX as required by The University's Policy;  *See* Exhibit B.

   c.   After Plaintiff's disclosure, Defendant Donovan did not advise Plaintiff of his right to an advisor as required by The University's Policy;  *See* Exhibit B.

   d.   After Plaintiff's disclosure, Defendant Donovan failed to adequately explain to Plaintiff the difference between the informal resolution process and the formal resolution process as required by The University's Policy;  *See* Exhibit B.

   e.   After Plaintiff's disclosure, Defendant Donovan failed to explain and/or assist Plaintiff with the process of filing a formal complaint under Title IX as required by The University's Policy;  *See* Exhibit B and

   f.   After Plaintiff's disclosure, Defendant Donovan failed to fully inform or ensure that Plaintiff was fully informed of all of his options under The University's Policy as required by The University's Policy.  *See* Exhibit B.

77.     Defendant Donovan failed to provide Plaintiff with Support Resources as mandated by The Policy, including, but not limited to, University and local counseling and support resources, assistance with making a report, resources about and how to file a complaint under The University's Policy, and resources about what to expect from the University's investigation process under The Policy.  *See* Exhibit B.

78.     Defendant Donovan failed to inform Plaintiff of his rights, in violation of The University's Policy, by failing to inform Plaintiff that he had a right to:

   a.   A No Contact Directive between the parties to allow Plaintiff to return to school;

     b.  Seek medical treatment, and explain the importance of obtaining and preserving forensic and other evidence;

     c.  Contact law enforcement or to decline to contact law enforcement;

     d.  Seek a protective order;

     e.  University and community resources;

     f.  Request reasonable academic, housing, employment, and other accommodations;

     g.  Seek informal resolution or formal resolution under this Policy;

     h.  Continue his education without fear of retaliation; and

     i.  Any other relevant information that may address the particular individual's safety or procedural questions and concerns.

*See* Exhibit B.

79.    Further in violation of The University's Policy (*see* Exhibit B), Defendant Donovan discouraged, intimated, and dissuaded Plaintiff from making a formal Title IX complaint by leading him to believe that a formal Title IX Complaint would result in a public trial.

80.    Upon information and belief, Defendant Donovan first informed The University's Title IX coordinator of Plaintiff's allegations on or about October 7, 2020.

81.    At all times material hereto, Defendant Donovan failed to inform anyone at The University's Title IX office about Plaintiff's complaint for five months.

82.    Upon information and belief, UArts failed to have an interim Title IX Coordinator employed, as required by law, between the time Plaintiff reported his Title IX Complaint to Defendant Donovan and October 7, 2020.

83.    On October 7, 2020, when finally reporting Plaintiff's allegations to the UArt's Title IX coordinator, Defendant Donovan admitted her mistake in handling Plaintiff's disclosure

and apologized for "the delay and misstep in [her] approach to this matter." Defendant Donovan also indicated her "actions were not the correct ones to take."[3]

84.    On or about October 8, 2020, Plaintiff was contacted by Sara Pyle, Assistant Vice President for Student Services Student Affairs and provided a link to the page on The University's website about the Title IX process as well as a one-page document titled Title IX Resources and Reporting Options.

85.    On October 12, 2020, Plaintiff was contacted by the investigator that The University hired to conduct the Title IX investigation.

86.    On or about October 14, 2020, Plaintiff had an initial interview with the Title IX investigator where he provided to her a detailed account of the rape.

87.    On or about October 26, 2020, the Title IX investigator told Plaintiff that he would receive a summary of the interview for his review to make changes and edits to.  The Title IX investigator also requested additional evidence for her investigation, including all of Plaintiff's correspondence with Defendant Donovan.

88.    On or about November 5, 2020 Plaintiff had another conversation with the Title IX investigator and was again told that he would receive a written summary of the interview that took place on or about October 26, 2020 for his review to make changes and edits to.

89.    On or about November 5, 2020 Plaintiff was first advised of the Notice of Allegations that would be sent to Defendant Dunn as required under Title IX.

90.    On or about November 23, 2020, Plaintiff was advised by the Title IX coordinator that the University officially launched an investigation into Defendant Donovan's alleged mishandling of Plaintiff's Title IX report.

---

[3] *See* 10/7/20 Correspondence attached hereto as Exhibit C.

91.     Plaintiff was provided with the November 16, 2020 Notice of Alleged Allegations of Employee Misconduct[4] that were sent to Defendant Donovan which stated that the University was informed that Defendant Donovan failed to report Plaintiff's sexual assault to the University's Title IX coordinator for five months and Donovan violated the following University policies:

     a.   The May 2020 Sexual Misconduct Policy, Section V

     b.   The August 2019 Sexual Misconduct Policy, Section V

     c.   The Faculty Handbook, Section 3.14

     d.   The Staff Manual, Chapter 4, Section 6

92.     As of December 10, 2020, Plaintiff still had not received the summary of his October 14, 2020 conversation with the Title IX investigator.  The Title IX investigator informed Plaintiff that she would send it to him by the morning of December 11.

93.     On December 14, 2020, Plaintiff was sent the summary of his interview with the Title IX investigator, exactly seven months after he reported the rape to the University.

94.     Throughout the fall semester of 2020, Plaintiff repeatedly asked the Title IX investigator to confirm the status of Dunn's employment with the University.

95.     Despite his repeated requests, The University refused to provide plaintiff with any information regarding the status of Defendant Dunn's employment with the University.

96.     At no time did the University advise Plaintiff of his right to request reasonable accommodations and/or interim measures so he could continue his education at UArts.

97.     At no time during the Fall 2020 semester did Defendant UArts offer to Plaintiff the option of a "no contact" directive, or any other reasonable accommodation, as permitted under

---

[4] *See* November 16, 2020 Employee Misconduct – Notice of Allegations directed to Katherine Donovan attached hereto as Exhibit D.

Title IX and UArts Policy, to allow Plaintiff to come back to campus without the fear of an encounter with Defendant Dunn.

98.    As a result of the University's failure to timely address Plaintiff's Title IX complaint and the University's failure to offer Plaintiff either reasonable accommodations or advise him of his right to a no contact directive, Plaintiff had no option other than to withdraw from the University.

99.    Plaintiff withdrew from The University in or around January 2021.

100.    After Plaintiff's disclosure of the assault, there were numerous unexplained and inexcusable delays throughout the Title IX investigation, including, but not limited to, the finalization of the investigators report and evidence file.

101.    On or about January 22, 2021, the investigator informed Plaintiff that the report would be finalized and sent to him for his review the week of January 25, 2021.

102.    The University did not send the final report to Plaintiff the week of January 25, 2021 and Plaintiff regularly followed up with the Title IX coordinator and the Investigator who continued to provide false assurances that the report would be sent to him soon.

103.    Upon information and belief, the University continued to provide Plaintiff with false information regarding the status of the Title IX investigation report.

104.    On or about April 9, 2021, Plaintiff was sent a copy of the Investigation report and evidence file for his review and response for the first time.  However, the report did not include the University's investigation into the allegations of employee misconduct against Defendant Donovan that were being investigated.  Despite repeated inquiries asking about the reason for the delay of the final investigation report and evidence file, at no time was Plaintiff provided an explanation for the 2-month delay in the finalization of the investigators report and evidence file.

105.    Despite being notified that the University launched an investigation into Defendant Donovan's mishandling of Plaintiff's Title IX complaint, Plaintiff was never provided an investigation report or advised of a hearing relating to the Alleged Allegations of Employee Misconduct.

106.    On or about July 29, 2021, fourteen (14) months after Plaintiff first reported he was raped by his professor, the Title IX hearing was held where it was determined, using the preponderance of evidence standard, that Defendant Dunn violated the following University policies:

      a.    Engaging in sexual misconduct against Plaintiff;

      b.    Engaging in sexual violence against Plaintiff; and

      c.    Engaging in sexual harassment against Plaintiff.

107.    On or about July 29, 2021, at the Title IX hearing, Defendant Donovan admitted she lied to Plaintiff when she advised him that she terminated the employment of Defendant Dunn in the fall of 2020.  Defendant Donovan further admitted that she did not even have the authority to terminate Defendant Dunn's employment with the University.  Defendant Donovan also admitted that she lied to Plaintiff when she told him she was taking detailed notes of their conversation on May 13, 2021 when Plaintiff first reported to her that Defendant Dunn raped him. Defendant Donovan also admitted to lying about "putting an anonymous note on the file" of Defendant Dunn regarding the allegations asserted by Plaintiff.  Defendant Donovan admitted that she continually lied to Plaintiff over the course of five (5) months about crafting a statement for Plaintiff's review.

108.    It was not until the Title IX hearing on July 29, 2021, that Plaintiff learned that Donovan had repeatedly lied to him regarding the handling of his disclosure of the assault by Dunn and the status of Dunn's employment.

109.    Upon information and belief, Defendant Dunn remained employed and/or in good employment status with the University throughout the 2020/2021 academic year.

110.    Having the power, authority, and responsibility to act, Defendants failed Plaintiff by showing deliberate indifference after Plaintiff reported a Title IX complaint wherein a UArts' professor severed alcohol to an underage student and then sexually assaulted him.

### UNIVERSITY OF THE ART'S TITLE IX POLICY

111.    The University's Policy states that it applies to conduct that occurs "[i]n the context of University employment, education, research, recreational, social or artistic activity, _irrespective of the location of the occurrence_, if the conduct has or can be reasonably predicted to have a continuing negative effect on the University and its students, faculty, visiting faculty, affiliates, staff, contractors, vendors, visitors or guests."  _See_ Exhibit B. (emphasis added).

112.    Section IV of the University's Policy requires that UArts have a Title IX Coordinator that is "responsible for monitoring compliance with Title IX; tracking and reporting annually on all incidents in violation of this policy; and coordinating the University's investigation, response and resolution of reports made under this policy." _See_ Exhibit B, Section IV.

113.    Section V of the University's Policy indicates the Reporting Responsibilities of University Employees and states:

> With the exception of the confidential resources listed in this policy, **all University employees, full and part-time, regardless of tenure or contractual status, are considered "Responsible Employees" and are mandated to report any incidents of misconduct under this Policy to the University's Title IX Coordinator.** Responsible Employees are required to share with the Title IX Coordinator all

known information, including the identities of any alleged Respondent (if known), the identities of any Complainants, the names of other witnesses involved in the alleged misconduct, as well as all other relevant facts of which the Responsible Employee is aware, including the date, time, and location of the incident and any statements made by parties or witnesses.  (emphasis added)

*See* Exhibit B, Section V.

114.    Section VII of the University's Policy prohibits certain conduct including but not limited to: Sexual Misconduct, Sexual Harassment, Gender-based Harassment, Sexual Violence, and Retaliation. *See* Exhibit B, Section VII.

115.    The University's Policy defines Sexual Misconduct as "a range of behaviors that includes, but is not limited to, sexual or gender-based harassment, sexual violence, sexual exploitation, relationship and interpersonal violence, stalking, and retaliation…. Additional factors to consider include whether the conduct was unwelcome and whether a reasonable person in that individual's position would have perceived the conduct as intimidating, hostile, offensive, or otherwise prohibited by this policy." *See* Exhibit B, Section VII Sexual Misconduct.

116.    The University's Policy defines Sexual Harassment as:

[A]ny unwelcome verbal or non-verbal contact, sexual advance, request for sexual contact or sexual favors, or other unwanted conduct of a sexual nature where:

1. Submission to or rejection of such behavior is made implicitly or explicitly a term or condition of instruction, employment, advancement, evaluation or participation in any University activity, program or benefit (commonly referred to as quid pro quo harassment); or

3. Such behaviors are sufficiently severe, persistent, or pervasive to have the purpose or effect of unreasonably interfering with an individual's academic or educational experience, working environment, or living conditions by creating an intimidating, hostile, or offensive environment (commonly referred to as hostile environment harassment).

*See* Exhibit B, Section VII Sexual Harassment.

117.    The University's Policy defines Gender-based Harassment as "any unwelcome verbal or non-verbal contact or conduct based upon sex or gender, sexual orientation, gender identity or gender expression, [which] need not be specifically sexual in nature to be prohibited by this policy. *See* Exhibit B, Section VII Gender-Based Harassment.

118.    The University's Policy defines Sexual Exploitation as "an act or acts committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage or other non-legitimate purpose. *See* Exhibit B, Section VII Sexual Exploitation.

119.    The University's Policy defines Sexual Violence as "having or attempting to have sexual contact with another person without that person's consent. This may include sexual intercourse or sexual contact achieved by the use or threat of force or coercion, where an individual does not consent to the sexual act, or where an individual is incapacitated." *See* Exhibit B, Section VII Sexual Violence.

120.    The University's Policy defines Retaliation as "any adverse action taken or threat made against an individual or group of individuals for filing a complaint or report under this policy; filing an external complaint or report,[…] or participating in the University's investigative or disciplinary process related to a complaint or report under this policy." *See* Exhibit B.  UArts specifically notes that any "conduct that has or is intended to have a materially adverse effect on the working, academic, social or living environment of an individual" is an example of retaliation. *See* Exhibit B, Section VII Retaliation.

121.    Section XII of the University's Policy requires an Initial Review of a Report and states, "the Title IX Coordinator and/or other appropriate University administrators will make an

initial review of the known information and respond to any immediate health or safety concerns raised by the report, including but not limited to the possible use of interim measures." *See* Exhibit B, Section XII. Section XII further states that an individual making a report of sexual misconduct will receive information, including but not limited to: the right to seek medical treatment, right to contact law enforcement, right to seek a protective order, available University resources, right to reasonable accommodations, and any other relevant information relative to the individual. *See id.*

122.    Section XIII of the University's Policy provides for Interim Measures and states "[t]he University may provide reasonable interim support and protective measures to prevent further acts of misconduct under this Policy and to provide a safe educational and work environment." *See* Exhibit B, Section XIII. Examples of interim measures include: academic accommodations; medical and mental health services, including counseling; a No Contact Directive that serves as a notice to both parties that they must not have verbal, electronic, written, or third-party communication with one another; and assistance identifying any other resources. *See id.*

123.    Section XVIII of the University's Policy provides the Formal Resolution Process for University Faculty and Staff accused of violations of the UArts' Policy which includes: Complaint, Investigation, Adjudication, Sanction, and Appeal. *See* Exhibit B, Section XVIII. Under the Policy, the investigation and resolution of formal complaints "will be reasonably prompt" and the University is required to "communicate… any  expected delays in the investigation or resolution of a complaint and the reasons for any delay." *See id.*

124.    Based on the conduct as described herein, the actions and/or inactions of Defendants UArts, by and through authorized agents, servants, employees, officers, and/or faculty members, including Donovan and Dunn,  violated the University's Title IX Policy by:

24

a.   Sexually assaulting Plaintiff;

b.   Failing to have a Title IX Coordinator;

c.   Failing to immediately report Plaintiff's disclosure of a sexual assault by a University employee;

d.   Failing to inform Plaintiff of his rights and remedies under the Policy;

e.   Failing to properly and promptly investigate Plaintiff's allegations;

f.   Retaliating against Plaintiff;

g.   Failing to provide Plaintiff with Interim Support and Protective Measures after the disclosure; and

h.   Failing to investigate and resolve Plaintiff's disclosure with reasonable promptness.

125.   Upon information and belief, Defendants repeated failures to afford Plaintiff fair and timely due process as required under Title IX and The University's Policy constitute acts of retaliation against Plaintiff.

126.   Defendant UArts failed to provide interim measures, such as a No Contact Directive, that would have allowed Plaintiff to return to the University to continue his education after Plaintiff reported he was sexually assaulted by his professor, as required by The University's policy and Title IX. *See* Exhibit B, Section XIII Interim Measures.

127.   Defendant UArts failed to make and/or put into place any accommodations that would have allowed Plaintiff to return to The University and continue his education in a safe environment free from sexual harassment, sexual violence, and sexual misconduct after Plaintiff reported that his professor, Defendant Dunn, raped him.

128.   As a direct and proximate result of the University's failure to provide interim measures, Plaintiff was unable to return to school without fear of interaction with Defendant Dunn.

129.     After Plaintiff's disclosure, in violation of state and federal laws, Defendant UArts failed to provide Plaintiff a safe educational environment free from sexual harassment, sexual violence, and sexual misconduct.

130.     At all times material hereto, the acts, conduct, and omissions of Defendants, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff.

131.     This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to teacher-on-student sexual assault and rape.

## THE UNIVERSITY'S FAILURE TO PROVIDE TRAINING UNDER ITS POLICIES AND PROCEDURES

132.     Upon information and belief, Defendant UArts, knew or should have known that Defendants, Dunn and Donovan, never received training on sexual misconduct, sexual harassment, sexual violence and/or retaliation under Title IX or the University's Policy.

133.     Upon information and belief, Defendant UArts knew or should have known that Defendant, Donovan, never received training on proper handling of Title IX complaints as set forth in the University's Policy and Title IX.

134.     Defendant UArts failed to ensure its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Donovan, were properly trained on how to handle reports of sexual misconduct, sexual harassment, and/or sexual violence.

135.     Defendant UArts failed to ensure its authorized agents, servants, employees, officers, and/or faculty members , including Defendant Dunn, were properly trained and advised on The University's policies against sexual misconduct, sexual violence, sexual harassment, and/or serving underage students alcohol.

26

136.    Defendant UArts failed to mandate that all of its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, received proper training on how to handle reports of sexual misconduct, sexual harassment, and/or sexual violence under The University's Policy and Title IX.

137.    Defendant UArts failed to provide its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, with accurate information regarding their reporting responsibilities according to The University's Policy and Title IX.

138.    Upon information and belief, at all times material hereto, Defendant UArts did not provide proper training or instruction to its authorized agents, servants, employees, officers, and/or faculty members, including, but not limited to, Defendants, Donovan and Dunn, on sexual misconduct, sexual violence, sexual harassment and retaliation as defined in The University's Policy and under Title IX.

139.    Upon information and belief, at all times material hereto, Defendant UArts failed to require and mandate training for all of its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn on sexual assault awareness and prevention, sexual misconduct, sexual violence and sexual harassment.

140.    Upon information and belief, Defendant UArts failed to ensure that its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, received proper and sufficient training on sexual assault awareness and prevention, sexual misconduct, sexual violence and sexual harassment.

141.    Upon information and belief, Defendant UArts failed to suspend and/or terminate the employment of Defendant Dunn for misconduct, specifically, sexual misconduct, sexual

violence, sexual harassment, inappropriate relationships between student and teacher and serving/providing underage students with alcohol.

142.    Upon information and belief Defendants, Donovan and Dunn, never received training on the University's policies relating to sexual misconduct, sexual violence, sexual harassment, and the rights afforded under Title IX.

143.    Upon information and belief, Defendant UArts did not require its authorized agents, servants, employees, officers, and/or faculty members, including, Defendants Donovan and Dunn, to receive training on the University's Policy and Title IX.

144.    Upon information and belief, despite the UArts' knowledge of prior complaints against Defendant Dunn of sexual assault, sexual misconduct, sexual harassment, inappropriate student/teacher relationships and/or serving underage students' alcohol, the University acted with deliberate indifference by failing to require Defendant Dunn to receive training on The Policy and Title IX.

145.    Upon information and belief, despite Defendant UArts' knowledge of prior complaints against Defendant Dunn, the University acted with deliberate indifference by failing to implement interim measures to ensure Defendant Dunn  complied with the University's Policy.

146.    At all times material hereto, Defendant UArts' failure to properly train Defendants Donovan and Dunn and its negligence in retaining Defendants Donovan and Dunn was in violation of Pennsylvania common law.

147.    The negligent, grossly negligent, careless, reckless, and/or other liability producing conduct of all Defendants was the direct and proximate cause of the permanent and severe physical, emotional and psychological trauma and injuries suffered by Plaintiff.

148.    This incident, and actions and inactions of the Defendants individually, jointly and/or severally caused Plaintiff permanent and severe physical, emotional and psychological trauma and injuries, hospitalization and medical treatment for syphilis. Plaintiff's trauma and injuries resulted in, among others, depression, major depressive disorder, anxiety, posttraumatic stress disorder, as well as other psychological and emotional injuries that triggered a pre-existing eating disorder.

149.    As a direct and proximate result of the negligence, gross negligence, recklessness, and other liability producing conduct of the Defendants, Plaintiff has in the past and continues to suffer mental anguish, psychological trauma, psychological injury, emotional harm, humiliation, embarrassment, fear, loss of well-being, and restrictions on his ability to engage in normal interpersonal relationships and pleasures of life, and other intangible losses.

150.    As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, and other liability producing conduct of the Defendants, Plaintiff has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings, a loss of earning capacity as well as financial loss equivalent to tuition and fees for four semesters at UArts, housing costs, and other related expenses and a significant delay in obtaining a Bachelor's degree and delay in post-undergraduate employment.

151.    Defendants are jointly and severally liable for the damages suffered by Plaintiff.

**DISCOVERY RULE, ESTOPPEL AND FRAUDULENT CONCEALMENT**

152.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

153.    Plaintiff pleads that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence

should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

154.    Defendants' failure to report, document, or investigate complaints against Defendant Dunn, and concealment of Defendant UArts' actions taken in response to Plaintiff's report of sexual misconduct, constitute fraudulent concealment that equitably tolls any proffered statute of limitation that may otherwise bar the recovery sought by Plaintiff herein.

155.    Defendants are estopped from relying on any statute of limitations defense because they fraudulently concealed and failed to disclose known dangerous behaviors and serious increased risks to Plaintiff's safety, health and wellbeing as a student at The University.

156.    Defendants represented that Defendants Dunn and Donovan were competent professors, faculty members, adjuncts, instructors and/or Heads of the musical theater department and entrusted them with the safety and wellbeing of students, including Plaintiff, instead, Defendants violated their duty to protect students enrolled in UArts from sexual assault and abuse and to ensure students are provided a safe educational environment free from sexual harassment, sexual violence, sexual misconduct and retaliation.

157.    At all relevant times, Defendants were under a continuing duty under federal law and parallel state laws to protect students, including Plaintiff, from sexual assault and abuse, and to provide a safe educational environment free from sexual harassment, sexual violence, sexual misconduct and retaliation, and to disclose the true character, quality, and nature of their employees and/or agents.

158.    As a result of Defendants' concealment of the true character, quality and nature of Defendants Dunn and Donovan and their conduct, they are estopped from relying on any statute of limitations defense.

159.    Defendants furthered their fraudulent concealment through acts and omissions, including acts of retaliation and misrepresenting known dangers of sexual assault and abuse and a continued and systemic failure to disclose and/or cover up such information from/to students, faculty, employees and the public.

160.    Defendants' acts and omissions, before, during, and/or after the act causing Plaintiff's injuries prevented him from discovering the injury or cause thereof until recently.

161.    Defendants' conduct, because it was purposely committed, was known or should have been known by them to be dangerous, heedless, reckless, and without regard to the consequences or the rights and safety of Plaintiff.

## COUNT I

## TITLE IX (20 U.S.C. § 1681) CLAIM FOR HOSTILE COLLEGIATE ENVIRONMENT
### (Plaintiff v The University Of The Arts)

162.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

163.    Title IX (20 U.S.C. § 1681), subsection (a) provides that subject to certain exceptions, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

164.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

165.    Plaintiff is a "person" within the meaning of 20 U.S.C. § 1681(a).

166.    UArts receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 *et seq.*

31

167.    UArts is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment, including, specifically, allegations that sexual abuse, sexual assault, or sexual harassment that has been committed by an employee. U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

168.    Defendant Dunn was an employee of UArts and professor within their education program to which Plaintiff was a student of.

169.    Defendant Dunn's actions and conduct toward Plaintiffs of nonconsensual sexual assault, battery, and molestation, which includes nonconsensual sexual touching and nonconsensual oral sex, in addition to further conduct described above, constitute sex discrimination under Title IX.

170.    Defendant UArts owed Plaintiff a duty under Title IX, which included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

171.    Upon information and belief, an "appropriate person" at UArts, within the meaning of Title IX, including but not limited to, Defendant Donovan, had actual and constructive notice of sexual assault, battery, molestation, and harassment committed by Defendant Dunn as described herein this Complaint.

172.    UArts failed to carry out their duties to promptly investigate and take corrective action under Title IX such to ensure a safe environment free from sexual abuse, harassment, and retaliation for Plaintiff to complete his education.

173.    As set forth in the Complaint, following Plaintiff's disclosure to Defendant Donovan that he had been sexually assaulted by Defendant Dunn, the University and its agents

and/or employees failed to take immediate responsive action, failed to inform Plaintiff of his rights under Title IX, failed to enter a No Contact Directive between Plaintiff and Defendant Dunn, misrepresented the status of the investigation, lied about material facts, and failed to put into place reasonable accommodations to allow Plaintiff to continue his education is a safe environment free from sexual harassment, abuse, all of which deprived Plaintiff of participation and benefits of the UArts' education program, benefits, and opportunities.

174.    The complete inaction of Defendant UArts, including its agents and employees, and the violation of the University's Guidelines, Policies, Manuals, and/or Handbook constitute deliberate indifference in the wake of being notified that Plaintiff was sexually assaulted by a University professor.

175.    The acts and omissions of Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members constitute retaliation in the wake of being notified that Plaintiff was sexually assaulted by a University professor.

176.    UArts acted with deliberate indifference to known acts of sexual assault, abuse, and molestation by:

    a)  Failing to timely investigate and address Plaintiff's complaint that he was sexually assaulted by his professor, as required by Title IX;

    b)  Failing to have a Title IX coordinator or interim Title IX Coordinator;

    c)  Failing to adequately advise Plaintiff of his rights under Title IX as required by law;

    d)  Failing to advise Plaintiff of the true status of Defendant Dunn's employment status;

    e)  Insisting and encouraging Plaintiff not to formally report the sexual assault;

    f)  Retaliating against Plaintiff after reporting that a University professor served him alcohol and sexually assaulted him;

g) Failing to advise Plaintiff of his right to a no contact directive;

h) Failing to advise Plaintiff of his right to request for reasonable accommodations to allow him to continue his education at the University;

i) Failing to enter a No Contact Directive between Plaintiff and Defendant Dunn; and

j) Failing to institute reasonable accommodations to permit Plaintiff to complete his education in an environment free from discrimination, sexual harassment, sexual abuse, and retaliation as required by law.

177.     Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members' failure to appropriately respond to, discipline, or in any way effectively and promptly address Plaintiff's sexual assault by a University employee resulted in Defendant UArts breach its duty under Title IX to provide students, such as Plaintiff, an educational environment free from discrimination, sexual harassment, sexual abuse and retaliation.

178.     Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members had actual and/or constructive notice of the sexual assault committed on Plaintiff by Defendant Dunn.

179.     Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members inaction, delay and/or lack of corrective action concerning violations of University Policy and Title IX constituted a deliberate indifference to a known sexual assault which was severe and objectively offensive as to bar Plaintiff's access to an educational opportunity.

180.     As a direct and proximate result of the deliberate indifference of Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, following the sexual assault, fostered a hostile collegiate environment.

181.    As a direct and proximate result of the deliberate indifference of Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, following the sexual assault, Plaintiff was barred access to an educational opportunity or benefit, and Defendants' continued inaction caused Plaintiff continued physical and emotional damage which deprived Plaintiff of his educational opportunity and benefits.

182.    As a result of Defendants, UArts' deliberate indifference and failure to act, by and through its authorized agents, servants, employees, officers, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, Plaintiff sustained serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

183.    Any and all commission and/or omissions, practices, and policies of Defendant UArts as aforementioned, collectively constitute violations of Title IX (20 U.S.C. § 1681), which prohibits sexual hostile climates in schools.

WHEREFORE, Plaintiff claims of Defendant, The University of the Arts, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT II

### TITLE IX (20 U.S.C. § 1681) PRE-ASSAULT CLAIM FOR HOSTILE COLLEGIATE ENVIRONMENT
### (Plaintiff v The University Of The Arts)

184.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

185.    Title IX (20 U.S.C. § 1681), subsection (a) provides that subject to certain exceptions, "[n]o person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

186.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

187.    Plaintiff is a "person" within the meaning of 20 U.S.C. § 1681(a).

188.    UArts receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 *et seq.*

189.    UArts is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment, including, specifically, allegations that sexual abuse, sexual assault, or sexual harassment that has been committed by an employee. U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

190.    Defendant Dunn was an employee of UArts and professor within their education program to which Plaintiff was a student of.

191.    Defendant Dunn's actions and conduct toward Plaintiffs of nonconsensual sexual assault, battery, and molestation, which includes nonconsensual sexual touching and nonconsensual oral sex, in addition to further conduct described above, constitute sex discrimination under Title IX.

192.    Defendant UArts owed Plaintiff a duty under Title IX, which included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

193.     Upon information and belief, an "appropriate person" at UArts, within the meaning of Title IX, had actual and constructive notice of sexual assault, battery, molestation, and harassment committed by Defendant Dunn prior to Plaintiff's sexual assault.

194.     UArts failed to carry out their duties to investigate and take corrective action under Title IX.

195.     UArts failed to adequately supervise, discipline and/or suspend Defendant Dunn even though UArts had actual or constructive knowledge that Dunn posed a substantial risk of sexual abuse to students to whom he had unfettered access.

196.     UArts acted with deliberate indifference to known acts of sexual assault, abuse, and molestation by:

a)   Failing to investigate and address prior complaints against Defendant Dunn of sexual assault, as required by Title IX;

b)   Failing to appropriately supervise Defendant Dunn;

c)   Failing to properly discipline and/or suspend Defendant Dunn; and

d)   Failing to institute corrective measures to prevent Defendant Dunn from violating and sexually abusing other students.

197.     Upon information and belief, Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, knew or should have known of the risk of sexual assault on UArts' students and responded inadequately and with deliberate indifference to effectively investigation of such incidents.

198.     Upon information and belief, UArts' failure to promptly and appropriately investigate and remedy prior complaints of sexual assault resulted in Plaintiff being subject to further harassment and a sexually hostile environment, effectively denying him access to educational opportunities at UArts.

199.    Upon information and belief, Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, exhibited deliberate indifference in their failure to implement appropriate disciplinary measures, policies, procedures, and/or training of its employees and staff to address the risk of sexual assault on UArts' students, and as a result, UArts' students, including Plaintiff, were denied the educational benefits and opportunities in violation of Title IX (20 U.S.C. § 1681).

200.    As a result of Defendants, UArts' deliberate indifference and failure to act, by and through its authorized agents, servants, employees, officers, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, Plaintiff sustained serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendant, The University of the Arts, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT III

## BREACH OF CONTRACT
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

201.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

202.    Upon enrollment, Plaintiff entered into a contract with The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, with the terms expressly provided in the University of the Arts' Student Handbook ("Handbook") and the Sex- and Gender-Based Misconduct Policy ("Policy").[5]

---

[5] *See* University of the Arts Student Handbook and the Sex- and Gender-Based Misconduct Policy (Appendix A of the Student Handbook) attached hereto as Exhibit E.

203.     The University and its authorized agents, servants, employees, officers, and/or faculty members manifested its intent to be contractually bound with its students, including Plaintiff, with the terms expressly provided in the Handbook and Policy.  According to the UArts' website,

> The Student Handbook and the Code of Conduct have been designed to both empower students while holding them accountable. **Everyone in the UArts community, from first-year students to seniors and faculty and staff, is held to the same values and expectations and is informed about policies, procedures, rights and privileges.**
>
> We encourage all students to review the information in the Student Handbook to learn their rights and responsibilities.[6] (emphasis added)

204.     The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, explicitly manifested their intent to be bound to the terms of their written policies and procedures, including the Notice Of Non-Discrimination And Equal Opportunity and Title IX Resources/Sexual Harassment Policy.  According to the UArts' website, "[t]he University of the Arts has developed written policies and procedures to promote and communicate consistency, continuity and understanding within our institution. **These policies are to be followed by all faculty, staff, students and visitors of the University**."[7] (emphasis added)

205.     The University and its authorized agents, servants, employees, officers, and/or faculty members promised its students, including Plaintiff, to abide by the terms, conditions, "policies, procedures, rights and privileges"[8] set forth in the Handbook and Policy.

---

[6] *See* https://www.uarts.edu/life-at-uarts/community-standards/student-handbook (last visited August of 2022).
[7] *See* https://www.uarts.edu/about/policies-and-regulations (last visited August of 2022).
[8] *Id.*

206.    Plaintiff, to his detriment, relied upon the representations of The University, its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, regarding provisions that are expressly stated in the Handbooks and The Policy.

207.    In particular, The University, its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, expressly agreed, inter alia, in the Student Handbook under the following sections:[9]

### NOTICE OF NON-DISCRIMINATION AND EQUAL OPPORTUNITY:

1)    The University prohibits acts of retaliation against those who report acts of harassment discrimination or who cooperate with the investigative process;

2)    **All faculty…at The University are required to report incidents of sexual misconduct to The University's Title IX Coordinator**; and

3)    The University will promptly and equitably respond to all reports of discrimination and harassment and retaliation…

### DISCRIMINATION AND DISCRIMINATORY HARASSMENT:

a)    [T]he University will act to remedy all forms of harassment when reported, whether or not the harassment rises to the level of creating a "hostile environment" under this section.

### VIOLENCE:

a)    The University is committed to maintaining a safe working, learning and living environment for all members…Threats, acts of aggression, physical attack and violence are unacceptable…

### STUDENT CODE OF CONDUCT:

a)    Prohibited behavior at The University of the Arts includes the following:

1.    Violation of policies as described in the University Catalog, the Student Handbook, and all other rules governing University facilities, programs and services

---

[9] *See* Exhibit E.

> > a. Conduct prohibited by the Sex- and Gender-Based Misconduct Policy, as outlined in Appendix A.
>
> b) Non-compliance with the directions of the University; and
>
> c) Violation of statutes, laws, ordinances and/or regulations of the City of Philadelphia, Commonwealth of Pennsylvania (or other states, when applicable) and the United States of America.

**CONDUCT REVIEW PROCESS**:

> a) Allegations involving sex-and gender-based misconduct will be forwarded to the Title IX coordinator;
>
> b) If the alleged incident represents a violation of federal, state, or local law, the reporting complainant is encouraged to initiate proceedings in the criminal or civil court system regardless of whether a complaint is filed within the University; and
>
> c) A…witness who intentionally provides misleading information may be subject to discipline…

208.    In addition to prohibited conduct under The Student Handbook as stated herein, The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, further expressly agreed in its Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy[10] that:

**REPORTING RESPONSIBILITIES OF UNIVERSITY EMPLOYEES**

> a. All University employees, full and part-time, regardless of tenure or contractual status, are considered "Responsible employees" and are mandated to report any incidents of misconduct under this Policy to the University's Title IX Coordinator;

**CONDUCT PROHIBITED BY POLICY**

> a. ***Retaliation***: Retaliation is defined as any adverse action taken or threat made against an individual or group of individuals for filing a complaint or report under this policy…[including] any other conduct that has or is intended to have a materially adverse effect on the working, academic, social or living environment of an individual.

---

[10] *See* Exhibit B.

**INITIAL REVIEW OF A REPORT**

    a.  An individual making a report of sexual misconduct under The Policy can expect information regarding: The right to seek a protective order, The right to information resolution or formal resolution under The Policy, and the University's prohibition against retaliation;

**INTERIM MEASURES**

    a.  The University may provide reasonable interim support and protective measures to prevent further acts of misconduct under this Policy and to provide a safe educational environment;

**FORMAL RESOLUTION PROCESS FOR FACULTY AND STAFF RESPONDENTS**

    a.  **Sanction**: In determining an appropriate sanction for a violation of this Policy, the University may consider a range of factors, including but not limited to: the nature of the conduct; the degree of violence, if any, involved; the impact of the conduct on the Complainant or other parties; the impact or implications of the conduct on the community or the University; prior misconduct by the Respondent; maintenance of a safe and respectful educational and employment environment; and any other mitigating, aggravating, or compelling circumstances in order to reach a just and appropriate resolution in each case.

        i.  Sanctions that may be imposed under this Policy include, but are not limited to: Verbal Warning; Written Warning; Educational Requirement; Suspension; Termination; and Other Discipline.

**OBLIGATION TO PROVIDE TRUTHFUL INFORMATION**

    a.  All University community members are expected to provide truthful information in any report or proceeding under The Policy. Knowingly submitting or providing false or misleading information in bad faith…to cause intentional harm to another, or to obstruct or delay the University's process in connection with an alleged Policy violation is prohibited and subject to disciplinary sanctions.

209.   The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, breached their obligations under the contract with Plaintiff, namely by failing to abide by the terms and conditions of the Student Handbook and Policy as stated in detail herein.

210.    Based on Plaintiff's allegations against Dunn and Donovan, The University recognized that Donovan's alleged misconduct may violate UArts' policies in the Sexual Misconduct Policies, Faculty Handbook, and Staff Manual.  On November 16, 2020, Christine Schaefer, the UArts' Associate Vice President for Human Resources, sent a "Notice of Allegations" letter to Donovan.[11]  The letter outlined Donovan's potential violations of University policies in handing Plaintiff's disclosure:

The allegations set forth above may implicate the following University policies and sections:

a)    The May 2020 Sexual Misconduct Policy, Section V
b)    The August 2019 Sexual Misconduct Policy, Section V
c)    The Faculty Handbook, Section 3.14
d)    The Staff Manual, Chapter 4, Section 6

The above-referenced policies and sections are identified for your assistance and not intended to be an exhaustive list of implicated terms.

211.    The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, breached and/or repudiated their contract with Plaintiff by:

a.    Failing to properly handle Plaintiff's Title IX Complaint;

b.    Failing to ensure Plaintiff was provided a safe educational environment free from sexual abuse, sexual violence and sexual harassment prior to and after he reported he was sexually assaulted by Defendant Dunn;

c.    Failing to take immediate action when Plaintiff reported he was sexually assaulted by Defendant Dunn;

d.    Failing to properly inform Plaintiff of his options and rights under Title IX and The University's Policy;

e.    Providing false information to Plaintiff in an attempt to prevent him from filing a formal Title IX Complaint;

---

[11] *See* Notice of Allegations letter to Defendant Donovan attached hereto as Exhibit D.  For purposes of Plaintiff's breach of contract claim, of the potential violations noted in the letter, only Donovan's violations of the Sexual Misconduct Policies are triggered.  Plaintiff is not contractually bound by the UArts' Faculty Handbook and Staff Manual; thus Donovan's violation of the UArts' Faculty Handbook and Staff Manual is discussed in support of Plaintiff's negligence claims, *infra*.

    f.   Providing false information to Plaintiff regarding the corrective actions taken by The University;

    g.   Failing to provide interim support and protective measures to Plaintiff for him to continue his education in a safe environment free from harassment and retaliation;

    h.   Providing false information regarding Defendant Dunn's employment status with The University;

    i.   Failing to have a trained and competent Title IX Coordinator or interim Title IX Coordinator in place when Plaintiff reported his sexual assault; and

    j.   Failing to adequately train employees, including, but not limited to, Defendant Donovan, of their reporting obligations under Title IX.

212.    The University and its authorized agents, servants, employees, officers, and/or faculty members, including Donovan, breached their contract with Plaintiff by falsely, and with the intent to deceive Plaintiff, in violation of the clearly stated rights, provided Plaintiff with false information regarding his rights and options under Title IX and The University's Policy, the complaint process under The University's Policy, and corrective actions taken by The University in response to Plaintiff's report as detailed herein. The clearly stated procedures under The Policy guaranteed Plaintiff the right to full, fair, and truthful information regarding his rights and options under Title IX and The University's Policy without retaliation for reporting sexual misconduct against an employee or faculty member.

213.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in

obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

214.    In addition to the aforementioned injuries and/or damages, as a result of the breach of contract by Defendants UArts and Donovan, Plaintiff suffered emotional distress with associated bodily injury, namely the exacerbation and/or aggravation of a pre-existing eating disorder resulting in malnutrition and malnourishment.

215.    Based on the sensitive, personal nature and character of Plaintiff's allegations, Defendants UArts and Donovan's breach of contract is the type of breach such that serious emotion disturbance is a particularly likely result.

216.    As a result of the breach of contract by Defendants UArts and Donovan, Plaintiff suffered severe emotional disturbance requiring significant medical treatment and counseling.

217.    By reason of Defendants UArts and Donovan's breach of contract by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT IV

### NEGLIGENCE
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

218.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

219.    While Plaintiff was enrolled as an undergraduate student at UArts, Defendant Donovan was the Head of the Musical Theater Department.

220.    At all times relevant hereto, Defendants Donovan and Dunn were acting within the course and scope of her/his employment and/or authority with the University.

221.    At all times relevant hereto, Defendants, UArts and Donovan, were responsible for the safety and wellbeing of students of The University and owed a duty to exercise ordinary care to provide a reasonably safe environment to students, visitors, and their guests, including Plaintiff.

222.    At all times relevant hereto, Defendants, UArts and Donovan, owed Plaintiff a duty to exercise ordinary care to ensure an educational environment free of sexual assault, sexual violence, sexual harassment and retaliation while interacting with faculty, employees, representatives and/or agents.

223.    At all times relevant hereto, Defendants, UArts and Donovan, owed Plaintiff a duty to exercise ordinary care in the handling of Plaintiff's complaint of sexual assault in accordance with the University's policies, Title IX and the law.

224.    At all times relevant hereto, Defendant Donovan was an employee acting within the course and scope of her employment and/or authority with the University, and Defendant was bound to the terms and conditions of the UArts' Staff Manual and the University's Policy

225.    At all times relevant hereto, Defendant Dunn was an employee acting within the course and scope of her employment and/or authority with the University, and Defendant was bound to the terms and conditions of the UArts' Staff Manual and the University's Policy

226.    The UArts' Staff Manual specifies the actions to be taken by Administrators, Faculty Members and Supervisors, including Defendant Donovan, who have knowledge of sexual misconduct, such that:

> In the event that a complaint of sexual harassment, sexual misconduct or other form of harassment -- formal or informal, written or oral, from an alleged victim or otherwise -- is made to an administrator, faculty member or staff member other than those specifically identified above, that administrator, faculty member or staff member **must**: (a) inform the person making the complaint that the matter will be referred to the appropriate Title IX Deputy Coordinator; and (b) promptly report, either orally or in writing, such complaint to the designated Title IX Deputy Coordinator. Every University administrator, faculty member and staff supervisor has a duty to maintain a workplace/educational environment free of any form of sexual harassment, sexual misconduct or other form of harassment. (emphasis added). [12]

227.    The UArts' Staff Manual, Section 3 forbids all Administrators, Faculty Members and Supervisors, including Defendant Dunn, from engaging in romantic or sexual relationships with students.

228.    Defendant, UArts by and through its authorized agents, servants, employees, officers, and/or faculty members, including Dunn and Donovan, breached their duty of care owed to Plaintiff in the following respects:

     a.   Failing to properly handle Plaintiff's disclosure;

     b.   Failing to follow guidelines established in the University's Staff Manual;

     c.   Failing to inform Plaintiff of his rights under Title IX and the University Policy;

     d.   Failing to inform Plaintiff that the matter will be referred to the Title IX Coordinator;

     e.   Failing to promptly report Plaintiff's disclosure to the designated Title IX Coordinator;

     f.   Failing to have a trained and competent Title IX Coordinator or interim Title IX Coordinator in place at the time Plaintiff reported his sexual assault;

     g.   Failing to properly handle Plaintiff's disclosure of sexual assault by a University Employee;

---

[12] *See* Exhibit A at pg. 67 Duty of Administrators, Faculty Members and Supervisors with Knowledge of Harassment.

h.  Failing to properly handle the Title IX process and/or investigation;

i.  Failing to maintain an educational environment free of any form of sexual harassment, sexual misconduct, sexual violence and retaliation;

j.  Failing to provide and ensure a safe educational environment for students, including Plaintiff;

k.  Failing to provide and ensure an environment free from retaliation in response to reports of sexual misconduct by faculty members;

l.  Failing to use due care under the circumstances for the safety and wellbeing of Plaintiff;

m.  Failing to adequately plan, plot and implement safety policies, procedures and responses;

n.  Failing to require, use, and enforce proper and necessary safety measures;

o.  Failing to implement and provide interim support and corrective measures after Plaintiff reported he was sexually assault by his teacher;

p.  Failing to implement a No Contact Directive between defendant Dunn and Plaintiff during the Title IX investigation;

q.  Failing to implement reasonable accommodations to allow Plaintiff to return to the University to complete his education;

r.  Failing to enact and enforce policies against retaliation;

s.  Failing to implement and/or enforce a policy against teachers/employees serving underage students alcohol;

t.  Enacting policies and procedures which were not adequate to prevent or discourage faculty members from committing sexual abuse;
u.  Providing Plaintiff with alcoholic beverages;
v.  Permitting teacher-student interactions outside the University setting;
w.  Permitting unsupervised teacher-student interactions outside the University setting; and
x.  Permitting romantic and sexual relationships between teacher and student.

229.  Defendant Donovan admitted she breached her duty of care owed to Plaintiff as Donovan admitted "actions were not the correct ones to take," and apologized for "the delay and misstep in [her] approach to this matter." *See* Exhibit C.

230.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

231.    The aforementioned negligent, grossly negligent, careless, intentional, reckless, and/or other liability producing acts and/or omissions Defendants Donovan and Dunn occurred while acting within the course and scope of their employment with the University, and as such, Defendant UArts is vicariously liable for that conduct under the doctrine of *respondeat superior*.

232.    As a result of Defendants, UArts and Donovan's, negligence and gross negligence while acting within the course and scope of their employment and/or authority, as aforesaid, Plaintiff sustained serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT V

### NEGLIGENCE
### (Plaintiff v The University Of The Arts)

233.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

234.    Defendant UArts owed a duty to maintain a reasonably safe education environment for its students, such as the Plaintiff, who were enrolled at the University that was free from sexual assault, sexual misconduct, sexual violence and retaliation.

235.    Defendant UArts owed a duty to ensure all of its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, received training and were properly informed on The Staff Manual, The Policy, sexual assault, sexual harassment, inappropriate relationships/interactions between professor and student, Title IX and appropriate steps to take when a title IX report of sexual assault is reported by a student.

236.    According to the UArts' Staff Manual (*see* Exhibit A at pg. 41), "[t]he Federal Campus Sexual Violence Elimination Act (Campus (SaVe) included within the Violence Against Women Reauthorization Act specifically lists sexual assault… and requires Universities to provide training programs for new employees and annual training updates for employees. Accordingly, all employees are required to undergo training upon hire, and annually thereafter."

237.    Defendant UArts had a duty to make available and offer training to its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan, at the time of first employment and annually thereafter, to ensure all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan, were properly informed of the University's Policies and Procedures.

238.    Upon information and belief, Defendant UArts never offered or provided training to authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan, on The Staff Manual, The Policy, sexual assault, sexual harassment, inappropriate relationships/interactions between professor and student, Title IX and appropriate steps to take when a title IX report of sexual assault is reported by a student.

239.    Upon information and belief, Defendant UArts never advised its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan, that training on The Staff Manual, The Policy, sexual assault, sexual harassment, inappropriate relationships/interactions between professor and student, Title IX and appropriate steps to take when a title IX report of sexual assault is reported by a student was required annually.

240.    Upon information and belief, Defendant UArts' knew or should have known that failure to provide training to its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, placed University students, including Plaintiff, at an increased risk of sexual assault, sexual harassment, sexual violence and retaliation.

241.    Defendant UArts  breached its duty of care to Plaintiff by:

   a.  Failing to provide and offer training on sexual assault, sexual harassment, sexual violence and retaliation to its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn;

   b.  Failing to provide and offer training on sexual assault, sexual harassment, sexual violence and retaliation to its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan;

   c.  Failing to mandate training on sexual assault, sexual harassment, sexual violence and retaliation to its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn;

   d.  Failing to mandate training on sexual assault, sexual harassment, sexual violence and retaliation to its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan;

   e.  Failing to offer and provide to all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan  training on sexual assault prevention and awareness and harassment training;

   f.  Failing to mandate that all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan receive training on sexual assault prevention and awareness and harassment;

g.  Failing to ensure that all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan, completed training on sexual assault, sexual harassment, sexual violence and retaliation;

h.  Failing to offer and provide annual training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan on sexual assault, sexual harassment, sexual violence and retaliation;

i.  Failing to mandate annual training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendants Dunn and Donovan on sexual assault, sexual harassment, sexual violence and retaliation;

j.  Failing to ensure that all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, knew and understood their obligations under The Policy and Title IX if a report of sexual assault, sexual violence or sexual misconduct was made to an authorized agent, servant, employees, officer, and/or faculty member;

k.  Failing to offer annual training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, on employee obligations under The Policy and Title IX;

l.  Failing to ensure all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, knew of The University's policies against sexual misconduct, sexual violence, sexual harassment, inappropriate student/faculty interactions and service of alcohol to underage students;

m.  Failing to provide and offer training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, on The University's policies against sexual misconduct, sexual violence, sexual harassment, inappropriate student/faculty interactions and service of alcohol to underage students;

n.  Failing to provide and offer annual training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, on The University's policies against sexual misconduct, sexual violence, sexual harassment, inappropriate student/faculty interactions and service of alcohol to underage students; and

o.  Failing to mandate training to all authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, on The University's policies against sexual misconduct, sexual violence, sexual harassment, inappropriate student/faculty interactions and service of alcohol to underage students.

242.    As a direct and proximate result of the conduct of Defendant, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

243.    As a direct and proximate result of Defendant UArts, negligence and gross negligence as aforesaid, Plaintiff sustained serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendant, The University of the Arts, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

244.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

245.    At all times relevant hereto, Defendants Donovan and Dunn were authorized agents, servants, employees, officers, and/or faculty members acting within the course and scope of her/his employment and/or authority with the University.

246.    At all times relevant to this cause, and as detailed herein, Defendant UArts by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, negligently advised Plaintiff that the invitation to Dunn's theater and apartment

53

was permitted under the University's policies and the meetings were intended to be for educational purposes.

247.    At all times relevant to this cause, and as detailed herein, Defendants UArts by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, negligently provided Plaintiff with false or incorrect information or omitted or failed to disclose material information concerning Plaintiff's rights and options under The University's Policy and Title IX, including, but not limited to, telling Plaintiff that a formal complaint under Title IX would involve a public trial, that Defendant Donovan was drafting a complaint/statement for Plaintiff's review and approval over a five month period and that The University would expeditiously address Plaintiff's Title IX Complaint.

248.    In addition to aforementioned misrepresentations, Defendants UArts by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, negligently provided Plaintiff with false or incorrect information, omitted and/or failed to disclose material information concerning the status of Defendant Dunn's employment status with The University.

249.    The information provided by Defendant, UArts by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, to Plaintiff was false and misleading, and contained omissions and concealment of truth about University's policies regarding appropriate student/teacher interactions, Plaintiff's rights and options under The University's Policy related to reporting incidents of sexual misconduct, sexual violence and sexual harassment, Defendant Dunn's employment status with the University and that The University would expeditiously investigate Plaintiff's Title IX report. Defendants, UArts    by and through its authorized agents, servants, employees, officers, and/or faculty

members, including Defendants Donovan and Dunn, made the foregoing misrepresentations knowing that they were false and/or without reasonable basis in fact.

250.    Upon information and belief, Defendants' by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, intent and purpose in making these misrepresentations was to deceive and defraud Plaintiff; to intimidate and discourage Plaintiff from making a formal complaint under Title IX; to protect the University from public disclosure or scandal relating to the sexual assault perpetuated by Defendant Dunn; and to falsely assure Plaintiff that the University resolved the situation by terminating the employment of Defendant Dunn.

251.    The foregoing representations and omissions by Defendants, by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, were in fact false.

252.    In reliance upon the false and negligent misrepresentations and omissions made by Defendants, by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Dunn, Plaintiff was induced to and did meet with his professor, Defendant Dunn, outside the classroom setting.

253.    In reliance upon the false and negligent misrepresentations and omissions made by Defendants, by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendant Donovan, Plaintiff was induced to and did remain enrolled in The University through the fall of 2020.

254.    Defendants knew and had reason to know that Plaintiff did not have the ability to determine the true facts and intentionally and/or negligently concealed and misrepresented the true facts.

255.    Defendants had sole access to material facts concerning The University's policy on student/teacher interactions outside the classroom, handling of Plaintiff's Title IX complaint, status of the Title IX investigation, and the status of Defendant Dunn's employment with The University.

256.    Plaintiff reasonably relied upon misrepresentations and omissions made by Defendants by and through its authorized agents, servants, employees, officers, and/or faculty members, including Defendants Donovan and Dunn, where the concealed and misrepresented facts were critical to understanding the true intent of Dunn's meetings with Plaintiff outside the classroom environment, status of Plaintiff's Title IX investigation and whether The University was a safe environment for Plaintiff to finish and obtain his bachelor's degree.

257.    Plaintiff's reliance on the foregoing misrepresentations and omissions by Defendants' were the direct and proximate cause of Plaintiff's injuries as described herein.

258.    The aforementioned negligent, grossly negligent, careless, intentional, reckless, and/or other liability producing acts and/or omissions Defendants Donovan and Dunn occurred while acting within the course and scope of their employment with the University, and as such, Defendant UArts is vicariously liable for that conduct under the doctrine of *respondeat superior*.

259.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

260.    By reason of Defendants' negligence and gross negligence by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT VII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

261.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

262.    At all times relevant hereto, Defendants, UArts, including its authorized agents, servants, employees, officers, and/or faculty members, owed a fiduciary duty to exercise reasonable care to provide a reasonably safe environment to UArts' students, including Plaintiff, free from sexual assault, sexual harassment, sexual violence and retaliation.

263.    At all times material hereto, Defendants, UArts, including its authorized agents, servants, employees, officers, and/or faculty members, as established by the University's Staff Manual (*see* Exhibit A), owed a fiduciary duty to the University students, including Plaintiff, to properly handle a student's allegation of sexual assault and/or misconduct.

264.    At all times material hereto, Defendants Donovan and Dunn, were acting within the course and scope of their employment with the University.

265.    Defendant UArts knew or should have known that Dunn's interactions with Plaintiff as described herein in detail, could cause physical injury to plaintiff resulting in severe emotional distress.

266.    As described more fully herein, Defendant Dunn's actions did cause physical injury to plaintiff that resulted in severe emotional distress.

267.    Based on the sensitive nature of sexual assault and/or misconduct, Defendants, UArts and Donovan, knew or should have known that mishandling Plaintiff's disclosure of sexual assault or misconduct would result in severe emotional distress.

268.    The tortious conduct of Defendant, by and through its authorized agents, servants, employees, officers, and/or faculty members, including Dunn and Donovan, was directed towards Plaintiff.

269.    Defendant, UArts could reasonably foresee that Dunn's and Donovan's actions would cause emotional distress to Plaintiff.

270.    Defendants Dunn and Donovan's conduct as described herein constituted negligence and caused significant emotional distress and physical injury to Plaintiff.

271.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

272.    The aforementioned negligent, grossly negligent, careless, intentional, reckless, and/or other liability producing acts and/or omissions Defendants Donovan and Dunn occurred while acting within the course and scope of their employment with the University, and as such, Defendant UArts is vicariously liable for that conduct under the doctrine of *respondeat superior*.

273.    By reason of Defendant, UArt's  negligence and gross negligence by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT VIII

### <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
### <u>(Plaintiff v. The University Of The Arts)</u>

274.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

275.    At all times relevant hereto, Defendant Dunn was an employee of UArts and acting within the course and scope of his employment and/or authority with the University.

276.    Upon information and belief, Defendant UArts authorized and encouraged UArts' its agents, servants, employees, and/or faculty members, including Defendant Dunn, to spend time with students, including Plaintiff,  in the Philadelphia arts community outside of the University setting as part of the University's curriculum to provide an arts-based education to its students.

277.    While at Defendant Dunn's residence, Dunn served Plaintiff several alcoholic beverages, engaged in an arts-based discussion about the Wizard of Oz, and after Plaintiff passed out and while Plaintiff was in and out of consciousness unable to control his faculties, Dunn sexually assaulted Plaintiff. *See* Count XII, *infra*.

278.    Defendant's conduct, by and through its agents, servants, employees, and/or faculty members, including Defendant Dunn, conduct constitutes extreme and/or outrageous behavior. Defendant's conduct, by and through its agents, servants, employees, and/or faculty members, including Defendant Dunn, was intentional or reckless.

279.    As a result of Defendant's conduct, by and through its agents, servants, employees, and/or faculty members, including Defendant Dunn's, as more fully described herein, Plaintiff was caused to suffer severe emotional distress, as well as, serious and permanent psychological injuries and physical injuries.

280.    The aforementioned negligent, grossly negligent, careless, intentional, reckless, and/or other liability producing acts and/or omissions Defendants Donovan and Dunn occurred while acting within the course and scope of their employment with the University, and as such, Defendant UArts is vicariously liable for that conduct under the doctrine of *respondeat superior*.

281.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiff claims of Defendant The University of the Arts sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT IX

### NEGLIGENT RETENTION
### (Plaintiff v. The University Of The Arts)

282.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

283.    Plaintiff John K.A. Doe was a former student at the University of the Arts enrolled in The Brind School of Theater from the fall of 2018 until the spring of 2021.

284.    At all times material hereto, Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, owed a duty of care to provide a reasonably safe environment to its students, including, Plaintiff, free from harassment, discrimination, and assault.

285.    At all times material hereto, Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, maintained a supervisory and/or student-teacher relationship over Plaintiff and had a duty to provide a reasonably safe environment to its students, including, Plaintiff, free from harassment, discrimination, and assault.

286.    Plaintiff met Defendant Dunn solely because of Dunn's status as a University employee.

287.    Upon information and belief, Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, has actual and/or constructive knowledge that Defendant Dunn had a propensity to commit sexual assault, and knew or should have known that Defendant Dunn posed an unreasonable risk of harm to UArts' students, including Plaintiff, after Defendant Dunn was hired by the University.

61

288.     Defendant UArts, including its authorized agents, servants, employees, officers, and/or faculty members, failed to appropriately investigate prior allegations and/or incidents of sexual assault involving Defendant Dunn and/or failed to relieve Defendant Dunn of his duty as an employee of the University, or failed to otherwise prevent harm by Defendant Dunn.

289.     As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

290.     As a result of Defendants, UArts' negligent retention of Defendant Dunn, by and through its authorized agents, servants, employees, officers, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, Plaintiff sustained serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT X

## ASSAULT AND BATTERY
### (Plaintiff v The University of The Arts)

291.     Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

292.    At all times relevant hereto, Defendant Dunn was an employee of UArts and acting within the course and scope of her/his employment and/or authority with the University.

293.    Upon information and belief, Defendant UArts authorized and encouraged its agents, servants, employees, and/or faculty members, including Defendant Dunn, to spend time with students, including Plaintiff, in the Philadelphia arts community outside of the University setting as part of the University's curriculum to provide an arts-based education to its students.

294.    While at Defendant Dunn's residence, Dunn served Plaintiff several alcoholic beverages, engaged in an arts-based discussion about the Wizard of Oz, and after Plaintiff passed out and while Plaintiff was in and out of consciousness unable to control his faculties, Dunn sexually assaulted Plaintiff. *See* Count XII, *infra*.

295.    As a result of Defendant Dunn's conduct, as more fully described herein, Plaintiff was caused to suffer an immediate and reasonable apprehension of harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

296.    As a result of Defendant Dunn's conduct, as more fully described herein, Plaintiff was caused to suffer serious and permanent psychological injuries and physical injuries as a result of transmitting syphilis to Plaintiff as stated herein.

297.    As a result of Defendant Dunn's conduct, as more fully described herein, Plaintiff, was caused to sustain serious and permanent and life-altering psychological injuries as well as physical injuries as more fully described in the preceding paragraphs of this Complaint.

298.    The aforementioned negligent, grossly negligent, careless, intentional, reckless, and/or other liability producing acts and/or omissions Defendants Donovan and Dunn occurred while acting within the course and scope of their employment with the University, and as such, Defendant UArts is vicariously liable for that conduct under the doctrine of *respondeat superior*.

299.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiff claims of Defendant The University of the Arts sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT XI

### NEGLIGENCE
### (Plaintiff v Daniel Dunn)

300.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

301.    At all relevant times, Defendant, Dunn, was an adjunct teacher, faculty member and employee of Defendant UArts where Plaintiff was enrolled as an undergraduate student and student in Defendant Dunn's Jazz Dance Practice class, which created a special, confidential, and fiduciary relationship between Plaintiff and Defendant, Dunn.

302.    Defendant Dunn owed a duty to Plaintiff and, by forcefully and aggressively sexually abusing and harassing Plaintiff, he breached that duty by acting with excessive and unreasonable force, threat and coercion, negligently and without due care for the reasons articulated in this Complaint.

303.    Defendant knew or should have known that Plaintiff was incapacitated and incapable of providing consent to engage in sexual acts and acted with willful disregard and/or recklessly for the reasons articulated in this Complaint.

304.    Defendant Dunn was unreasonable, negligent, grossly negligent, careless and reckless generally and in the following respects:

       a.      Failing to exercise reasonable care;

       b.      Failing to retreat when Plaintiff passed out or incapacitated;

       c.      Failing to obtain consent to engage in sexual acts from the Plaintiff;

       d.      Using excessive and unreasonable force;

       e.      Providing Plaintiff, who was under the legal drinking age, with alcohol;

       f.      Engaging in sexual acts when Defendant Dunn knew or should have known that he was infected with syphilis;

       g.      Disregarding Plaintiff's attempts to stop the sexual acts; and

       h.      Failing to exercise reasonable care.

305.    By reason of the negligence, gross negligence, carelessness and recklessness of Defendant, Dunn, Plaintiff was caused to sustain serious and permanent and life-altering psychological injuries as well as physical injuries as more fully described herein.

WHEREFORE, Plaintiff claims of Defendant, Daniel Dunn, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

## COUNT XII

### ASSAULT AND BATTERY
### (Plaintiff v Daniel Dunn)

306.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

307. Defendant Dunn, in forcefully and aggressively sexually abusing Plaintiff engaged in intentional, wanton, willful and outrageous conduct, acted with deliberate malice, and/or was grossly and outrageously negligent, acted with reckless disregard of and with deliberate callous and reckless indifference to the rights, interest, welfare and safety of Plaintiff for the reasons articulated in this Complaint.

308. As a result of Defendant Dunn's intentional, wanton, willful and outrageous conduct, Plaintiff was caused to suffer an immediate and reasonable apprehension of harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

309. As a result of Defendant Dunn's intentional, wanton, willful and outrageous conduct, Plaintiff was caused to suffer serious and permanent psychological injuries and physical injuries as a result of transmitting syphilis to Plaintiff as stated herein.

310. Defendant, Dunn, intentionally assaulted and caused bodily harm to Plaintiff by inflicting serious and permanent psychological injuries and physical injuries caused by forcibly and aggressively sexually abusing Plaintiff and transmitting syphilis to Plaintiff, thereby violating the common law of the Commonwealth of Pennsylvania whose courts have adopted the principles of the Restatement (Second) of Torts concerning the offenses of assault and battery, including, without limitation:

§ 13 Battery: Harmful Contact

(1)   An actor is subject to liability to another for battery if:
  a. he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
  b. a harmful contact with the person of the other directly or indirectly results.

§ 15 What Constitutes Bodily Harm

Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness

§ 18 Battery: Offensive Contact

(1)  An actor is subject to liability to another for battery if:
    a.  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
    b.  an offensive co tact with the person of the other directly or indirectly results

§ 21 Assault

(1)  An actor is subject to liability to another for assault if:
    a.  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
    b.  the other thereby put in such imminent apprehension.

311.  By reason of the carelessness, negligence, gross negligence, recklessness and/or intentional conduct of Defendant Dunn, Plaintiff, was caused to sustain serious and permanent life-altering psychological injuries as well as physical injuries as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendant, Daniel Dunn, sums in excess of Seventy-Five Thousand Dollars ($75,000.00) in damages, including punitive damages, plus interest, costs, and any other further relief as is deemed equitable and just by the Court.

**RESPECTFULLY SUBMITTED,**

THE JOEL BIEBER FIRM

BY:____*/s/ Melissa Fry Hague*_____
        MELISSA FRY HAGUE
        MICHAEL R. MANARA
        ***Attorneys for Plaintiff***

Dated: December 19, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing *First Amended Complaint* was

caused to be served today upon all counsel of record via the court's electronic filing system.

James A. Keller, Esquire
Trisha M. Duffy, Esquire
**SAUL, EWING, ARNSTEIN & LEHR**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
215-972-1964
Jkeller@saul.com
Tricia.duffy@saul.com
*Attorneys for Defendant University of the Arts and Defendant Donovan*

Noah S. Cohen, Esquire
**WEIR GREENBLATT PIERCE, LLP**
123 South Broad Street, Suite 2500
Philadelphia, PA 19109
(215) 735-1600
ncohen@wgpllp.com
*Attorney for Defendant Dunn*

Date:  December 19, 2022          By:     */s/ Melissa Fry Hague*
                                            Melissa Fry Hague
                                            Michael R. Manara